Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7643 | **DATE** | 5/10/2001 |
| **CASE TITLE** | Santa's Best vs. Seattle Coffee Co., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Ruling date of 5/10/01 stricken. Enter Memorandum Opinion and Order. Defendants' motion for partial summary judgment [19] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAY 11 2001 date docketed | 31 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | 5/10/2001 date mailed notice | |
| MD | courtroom deputy's initials | | MD | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SANTA'S BEST, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 00 C 7643 |
| SEATTLE COFFEE CO., and SEATTLE'S BEST COFFEE, LLC, | ) ) ) |
| Defendants. | ) ) |

DOCKETED
MAY 1 1 2001

## MEMORANDUM OPINION AND ORDER

Plaintiff filed a seven count complaint against defendants based on their use of the SANTA'S BEST trademark. Count I of the complaint is brought under the Federal Trademark Dilution Act of 1995, 15 U.S.C. § 1125(c) (the "FTDA"), which became effective on January 16, 1996. Defendants presently move for partial summary judgment on count I, claiming that they began use of the subject mark two years before the FTDA's enactment and, as such, plaintiff's cause of action in count I is barred as retroactive. For the reasons articulated below, the court denies defendants' motion.

## SUMMARY JUDGMENT STANDARDS

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving

party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-599. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## FACTS

Plaintiff has been using the SANTA'S BEST trademark since the 1960s in connection with the manufacture and sale of Christmas products. Sometime in 1993, 1994, or 1995, defendants[1] began using the mark SANTA'S BEST COFFEE in connection with the sale of coffee, but stopped using the mark sometime in 1994 or 1995.[2] In 1996, defendants adopted the SANTA'S BEST BLEND mark in connection with the promotion and sale of coffee. In 1997 and 1998, defendants offered for sale Christmas ornaments with the coffee using the SANTA'S BEST BLEND mark, and Christmas collectible tins from 1997 through 2000, but neither the ornaments nor the tins had the any mark containing the words SANTA'S BEST printed on them. In 2000, defendants began using the SANTA'S BEST mark also in connection with the promotion and sale of coffee and again sold this coffee in conjunction with the sale of other

---

[1] For simplicity's sake, and because the parties make no attempt to distinguish the two defendants, the court will refer to defendants jointly throughout this opinion even though the evidence appears to provide that only one of the defendants at any given time may have actually been engaged in the behavior described.

[2] As plaintiff notes, a fact issue exists regarding when defendant began using the SANTA'S BEST COFFEE mark.

2

products not bearing the mark, including Christmas collectible tins.[3] Defendants' sales of products bearing the above-described marks grew steadily from 1995 through 1999, but sales decreased in 2000. Although defendants assert that the increase in sales was a result of increased good will and marketing investment, defendants admit that they do not attribute the increase in sales to a specific increase in the good will associated with any of these marks, but rather the general goodwill for all of the blend name products. Additionally, defendants only provide figures for their overall promotional budget, which shows that they spent somewhere between $20,000 and $45,000 per year from 1996 through 2000 on retail promotional and marketing activity.[4]

Defendants learned of plaintiff's use of the SANTA'S BEST mark when their outside counsel conducted a trademark search in 1993. In December 1996, plaintiff's attorney sent defendants a letter informing defendants that it had federal registrations or applications for the SANTA'S BEST mark for a variety of Christmas-related goods and asking that defendants assure plaintiff that it would not use the mark to identify coffee in the future.[5] In August 1997, after

---

[3] Although defendants maintain that they began using the mark SANTA'S BEST COFFEE, the evidence shows that the TM symbol is after the words SANTA'S BEST. (*See* Severn Dep. at 23.)

[4] Defendants submit as Exhibit C to their Reply a number of documents without any explanation supposedly showing that they did not spend approximately $30,000 per year on their overall promotional budget. This court is unsure what these documents show but notes that defendants also cited to deposition testimony relied upon by plaintiff that supports the above-stated proposition.

[5] The letter reads, in pertinent part:

Santa's Best has federal registrations and/or application for the mark SANTA's BEST for a wide variety of Christmas related goods. . . . It has come to the attention of Santa's Best that your company is putting out for the holiday season, a coffee blend identified as "SANTA'S BEST". My client is concerned about the use of its registered trademark by your company. Understanding that there is a long lead time in connection with preparing goods for distribution at retail and that now is the time when coffee under the mark "SANTA'S BEST" would have to be sold, my client does not wish to interfere with this season's use of the mark. However, Santa's Best would like

(continued...)

3

some contact with defendants, plaintiff's attorney wrote to defendants expressing concern about defendants' expanded use of the SANTA'S BEST mark.[6] The August 1997 letter also informed defendants that plaintiff's use of the SANTA'S BEST mark extended from 1961 forward and has been registered since 1975 in five different classes. Plaintiff filed this action on December 5, 2000.

## DISCUSSION

Defendants argue that since it adopted the SANTA'S BEST COFFEE mark before the enactment of the FTDA, plaintiff can neither seek damages nor injunctive relief against future use. Plaintiff responds (1) that the FTDA can be applied to pre-enactment trademark use that is continued post-enactment; (2) that only one of three marks containing the words SANTA'S BEST was adopted prior to the FTDA, and the pre-enactment mark has since been abandoned; and (3) that defendants have expanded their use of the mark to products covered by plaintiff's federally registered trademarks. As such, plaintiff contends that it possesses a viable cause of

---

[5](...continued)
assurances that Seattle's Best will not use the mark SANTA'S Best to identify coffee in the future.

(Pl.'s Ex. 19.)

[6]This letter reads, in pertinent part:

> A concern to my client is the fact that Seattle's Best is now expanding its use of the mark Santa's Best by virtue of the fact that Seattle's Best now not only has stand-alone stores but has opened outlets in locations which also sells my client's goods. For instance, ny client sells goods through mass merchandisers such as Osco and the like. To the extent that Seattle's best [sic] now is opening outlets in places like Osco, there is an increased likelihood of confusion between the mark Santa's Best used by your client and the mark Santa's Best used by my client, as both marks are going to be used in the same location.

(Pl.'s Ex. 20.)

4

action under the FTDA and genuine fact issues exist as to whether plaintiff is entitled to damages and injunctive relief.

There exists support for both the plaintiff's and defendants' position but, thus far, the Seventh Circuit has not decided the issue of whether the FTDA may be applied to bar future use of a legally adopted trademark that, with the enactment of the FTDA, become violative of federal trademark law. Prior to the FTDA's enactment, only use of a trademark that caused a likelihood of confusion with a senior user's mark violated federal trademark law. *See, e.g., Hasbro, Inc. v. Clue Computing, Inc.*, 66 F. Supp. 2d 117, 126 (D. Mass. 1999) ("The FTDA created a new cause of action to protect a 'famous' trademark from dilution whether or not another's use of that mark is likely to result in confusion, which had been required by the preexisting federal trademark statutes.") With the enactment of the FTDA, however, senior users may now bring federal trademark claims against junior users if the senior user's mark is "famous" and "subsequent uses . . . tarnish or disparage or blur the distinctiveness of the mark, regardless of the likelihood of customer confusion." *Viacom Inc. v. Ingram Enters., Inc.*, 141 F.3d 886, 888 (8th Cir. 1998).[7] In *Landgraf v. USI Film Prods.*, the Supreme Court reiterated that absent clear

---

[7] 15 U.S.C. § 1125(c) reads in full:

(c) Remedies for dilution of famous marks
    (1) The owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection. In determining whether a mark is distinctive and famous, a court may consider factors such as, but not limited to--
        (A) the degree of inherent or acquired distinctiveness of the mark;
        (B) the duration and extent of use of the mark in connection with the goods or services with which the mark is used;
        (C) the duration and extent of advertising and publicity of the mark;

(continued...)

Congressional intent, it will not "give retroactive effect to statutes burdening private rights," 511 U.S. 244, 270 (1994), and held § 102 of the Civil Rights Act of 1991 should not apply to cases arising before that statute's enactment. Citing *Landgraf*, courts have found that the FTDA cannot be applied retroactively to conduct made illegal by the Act but completed prior to the Act's enactment. *See S. Indus., Inc. v. Diamond Multimedia Sys., Inc.*, 991 F. Supp. 1012, 1021 (N.D. Ill. 1998) (collecting cases). Some federal district courts have further found, however, that "if the selection and adoption of a mark is lawful, its continued use cannot be interrupted by a law such as the Federal Dilution Act which imposes new legal duties, utilizes a new legal standard and crafts a new legal remedy." *Id. See also Nike Inc. v. Nike Sec. L.P.*, 50 U.S.P.Q.2d

---

[7](...continued)
       (D) the geographical extent of the trading area in which the mark is used;
       (E) the channels of trade for the goods or services with which the mark is used;
       (F) the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought;
       (G) the nature and extent of use of the same or similar marks by third parties; and
       (H) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.
(2) In an action brought under this subsection, the owner of the famous mark shall be entitled only to injunctive relief as set forth in section 1116 of this title unless the person against whom the injunction is sought willfully intended to trade on the owner's reputation or to cause dilution of the famous mark. If such willful intent is proven, the owner of the famous mark shall also be entitled to the remedies set forth in sections 1117(a) and 1118 of this title, subject to the discretion of the court and the principles of equity.
(3) The ownership by a person of a valid registration under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register shall be a complete bar to an action against that person, with respect to that mark, that is brought by another person under the common law or a statute of a State and that seeks to prevent dilution of the distinctiveness of a mark, label, or form of advertisement.
(4) The following shall not be actionable under this section:
       (A) Fair use of a famous mark by another person in comparative commercial advertising or promotion to identify the competing goods or services of the owner of the famous mark.
       (B) Noncommercial use of a mark.
       (C) All forms of news reporting and news commentary.

6

1202 (N.D. Ill. 1999). These courts often look to principles of fairness and equity, in addition to the *Landgraf* decision, in forming their conclusion.[8]

On the other hand, more recent authority from both federal district courts and courts of appeals have found, also relying on *Landgraf*, that prospective injunctive relief based on continuing conduct that commenced pre-FTDA is not barred as retroactive. The Eighth Circuit, for instance, refused to "brush aside as dicta," *Viacom*, 141 F.3d at 889, the Supreme Court's statement in *Landgraf* that "[e]ven absent specific legislative authorization, application of new statutes passed after the events in suit is unquestionably proper in many situations. When the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive." 511 U.S. at 273.[9] Instead, the Eighth Circuit found that statement

---

[8] The *S. Indus.* court stated:

> Diamond elected, adopted, and first used the STEALTH mark for its video and graphics computer boards in 1991. Relying on the law that existed in 1991, Diamond spent a significant amount of money publicizing its mark and sold millions of video and graphics computer boards bearing its STEALTH mark. Indeed, during the four year period before the Federal Dilution Act created a new claim, defendants used and promoted a valid legal mark. Defendants therefore "completed" the section and publicizing of the mark prior to the enactment of the Federal Dilution Act. *See Resorts of Pinehurst, Inc.* [v. *Pinehurst Nat'l Dev. Corp.*], 973 F. Supp. [552,] 558 [(M.D.N.C. 1997)]. It would be manifestly unfair to require Diamond to abandon its investment and accompanying goodwill associated with its name in light of a new law which departs from the traditional "likelihood of confusion" standard. Therefore, application of the Federal Dilution Act would have an impermissible retroactive effect by "attachi[ing] a new disability [] in respect to the transactions or considerations already past." *Landgraf*, 511 U.S. at 270 (citiations omitted). Defendants' purported conduct is not actionable under the Federal Dilution Act.

991 F. Supp at 1021 (last two alterations in original). *See also Nike Inc.*, 50 U.S.P.Q.2d at 1207 ("application of the Act would be unfair to [the defendant], which developed and promoted its mark at a time when it was legal to do so – almost two and a half years before the Dilution Act became effective"); *Circuit City Stores, Inc. v. OfficeMax, Inc*, 949 F. Supp. 409, 418 (E.D. Va. 1996) ("Guided by the familiar considerations of fair notice, reasonable reliance, and settled expectations, the Court finds that enforcing the Dilution Act in this action would have an impermissible retroactive effect and would run afoul of the teaching and holding of *Landgraf*.") (citation and internal quotation marks omitted).

[9] *Circuit City* referred to this language as dicta and further found that the language spoke "solely to cases in which the relevant conduct was already illegal before the effective date of the intervening statute." 949 F. Supp. at
(continued...)

7

"part of a carefully crafted holding on retroactivity" binding on lower courts. 141 F.3d at 889. The Eighth Circuit acknowledged, however, that "fairness is important in considering retroactivity issues" and concluded that, based on § 1125(c)(1)'s express provision that injunctive relief is discretionary and subject to equity principles, if the junior user's "non-competing, non-confusing use of the [subject] mark prior to the FTDA's enactment was lawful and resulted in [the junior user] acquiring a valuable and legitimate property interest of its own, [the senior user] will presumably not be entitled to an anti-dilution injunction granting it a nationwide monopoly in the use of this rather common word[, BLOCKBUSTER.]" *Id.* at 890. Therefore, as noted in *Nike Inc.*, 50 U.S.P.Q.2d at 1207, the results of the Eighth Circuit and courts holding that retroactive application is barred are not entirely dissimilar as a practical matter, in that both rely, in part, upon fairness principles to form their decisions. The Eighth Circuit's approach simply rejects the notion that the FDTA cannot be applied to continuing conduct that was permissible prior to the statute's enactment and leaves it to judicial discretion to determine whether, *under the FTDA*, prospective injunctive relief is appropriate. This approach has been adopted by at least one district court in the Northern District of Illinois, *see Medic Alert Found. United States, Inc. v. Corel Corp.*, 43 F. Supp.2d 933, 941 (N.D. Ill. 1999), and two other Courts of Appeals, *see Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 669 n.11 (5th Cir. 2000); *Sporty's Fam L.L.C. v. Sportsman's Market, Inc.*, 202 F.3d 489, 501 (2d Cir. 2000). *See also Bunn-O-Matic v. Bunn Coffee Serv., Inc.*, 88 F. Supp.2d 914, 924-25 (C.D. Ill. 2000). This court likewise finds the Eighth Circuit's approach more persuasive and, as such, adopts it here.

---

[9](...continued)
417. The Eighth Circuit, in rejecting the Circuit City court's holding and analysis, noted that "other Supreme Court cases make it clear that the pronouncement has a broader sweep." *Viacom*, 141 F.3d at 889.

Applying *Viacom*, therefore, this court rejects defendants' argument that plaintiff cannot maintain a claim for prospective injunctive relief for conduct initiated pre-FDTA but continuing after the statute's enactment. Instead, this court must determine whether plaintiff's mark is "famous," whether defendant's actions caused dilution, and whether principles of equity allow the imposition of prospective injunctive relief. The court finds, however, that genuine fact issues surround all three of these inquiries. First, the record is not developed as to whether plaintiff's mark was famous at the time defendants began using the mark and whether defendants' use caused dilution. Second, it is substantially less than clear that principles of fairness and equity warrant denial of prospective injunctive relief. Defendants have not shown that they've invested substantially in the development, promotion, and good will of a mark used pre-FTDA. For these reasons, summary judgment is not appropriate on count I.

Because fact issues surround the initial inquiry of whether defendants are liable under the FDTA, this court need not address whether damages are appropriate except to note that wilfulness has neither been proven nor disproven at this juncture.[10]

## CONCLUSION

For the above stated reasons, the court denies defendants' motion for partial summary judgment [#19].

Date: May 10, 2001        Enter: _____
                                  JOAN HUMPHREY LEFKOW
                                  United States District Judge

---

[10] The court also notes, however, that unlike the prospective injunctive relief remedy, damages for pre-FDTA conduct would appear to violate the Supreme Court's *Landgraf* decision. If defendants' pre-enactment conduct was infringing, as plaintiff asserts, it may be entitled to damages under some other provision of trademark law, but there appears no authority for allowing damages under the FDTA for pre-enactment activity.